UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT J. BUECHEL,

    Plaintiff,

v.               Case No. 18-CV-288-pp

CRAIG O'DONNELL, BRAD HOMPE,
LORI DOEHLING, R BUBOLZ,
B BACON, JUDY SMITH,
J ZANNON, CAPT TONEY,
D FOSTER, DAWN FOFANA,
NANCY BOWENS, DR MURPHY,
MELANIE BERENIE[1], and
JOHN AND JANE DOES,

    Defendants.

---

**ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION TO USE FUNDS FROM RELEASE ACCOUNT TO PAY PARTIAL FILING FEE (DKT. NO. 5), AND SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

---

    Plaintiff Robert J. Buechel filed a complaint alleging that the defendants violated his constitutional rights. Dkt. No. 1. At the time the plaintiff filed his complaint, he was a state prisoner and was representing himself.[2] He also has

---

[1] The plaintiff spells this defendant's name several ways in his complaint. The court will use this spelling for consistency.

[2] When the plaintiff filed his complaint in February of this year, he was in custody at Oshkosh Correctional Institution. Dkt. No. 1 at 1. On May 31, 2018, the court received a letter from the plaintiff, indicating that he was scheduled to be released from custody on June 5, 2018, and that the court should send

filed a motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, a motion to appoint counsel, dkt. no. 4, and a motion to use funds from release account to pay initial partial filing fee, dkt. no. 5.

The clerk's office originally assigned the case to Magistrate Judge William Duffin. Because the plaintiff did not consent to Judge Duffin deciding the case, the clerk reassigned it to this court.

## I. Motion for Leave to Proceed Without Prepayment of the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case, because the plaintiff was in custody when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time. Id.

On February 26, 2018, Judge Duffin ordered the plaintiff to pay an initial partial filing fee of $4.54. Dkt. No. 8. The court received that fee on March 12, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee. The plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this order.

---

his mail to a post office box in Fond du Lac. Dkt. No. 16. The court checked the Wisconsin Inmate Locator service on-line, and confirmed that the plaintiff was released on June 5, 2018. https://appsdoc.wi.gov/lop/detail.do.

**II. Motion to appoint counsel (Dkt. No. 4)**

The plaintiff has also filed a motion asking the court to recruit an attorney to represent him. Dkt. No. 4. The motion is mostly illegible, but from what the court can tell, the plaintiff indicates simply that he does not have legal counsel, and that he doesn't understand enough to proceed on his own. Id.

In a civil case, the court has discretion to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). The person first must first make reasonable efforts to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a plaintiff can satisfy that requirement by contacting at least three lawyers and asking if they would be willing to represent him, and providing the court with their names and their responses. Once the plaintiff shows that he has unsuccessfully tried to hire a lawyer on his own, the court decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has not satisfied the first Pruitt factor by demonstrating that he made reasonable attempts to hire private counsel on his own. He does not indicate that he tried to contact any lawyers. For that reason, the court will deny the plaintiff's motion.

Even if the plaintiff had satisfied the first Pruitt requirement, however, the court would deny his motion at this stage in the case. This order screens the plaintiff's complaint, and arranges for serving it on the defendants. The next step in the process is for the defendants to respond to the complaint. The defendants might file an "answer" to the complaint. If they do, the court will issue a scheduling order, setting deadlines for the parties to exchange discovery and file motions. Once the court issues the scheduling order, the plaintiff may, under Federal Rule of Civil Procedure 33, ask the defendants to answer interrogatories (i.e., written questions) regarding the alleged events, and under Federal Rule of Civil Procedure 34, he may ask the defendants for any reports or records that he believes are relevant to the alleged events.

Instead of filing an answer, the defendants might file some other response; if so, the court will set the appropriate deadlines. Right now, there is nothing for the plaintiff to do, which means there is nothing for a lawyer to do for him.

The court understands that the plaintiff would prefer to have an attorney represent him. Unfortunately, there is no money for the court to hire lawyers to represent plaintiffs in civil cases, and there simply are not enough lawyers who

4

are willing and able to volunteer for these cases. That is why the court must analyze the complexities of each case when determining whether a particular plaintiff is capable of proceeding on his own.

At this early stage, the court concludes that the plaintiff is able to represent himself. The plaintiff may renew his motion if, after the parties exchange discovery, he feels that the case is too complicated for him to handle on his own.

**III.     Motion for Use Funds from Release Account to Pay Partial Filing Fee (Dkt. No. 5)**

The plaintiff filed a motion asking the court to allow use of his release account funds to pay his initial partial filing fee. Dkt. No. 5. The plaintiff already has paid his initial partial filing fee, so the court will deny this motion as moot.

**IV.     Screening of the Complaint**

   A.     <u>Standard for Screening Complaints</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) that the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   The Plaintiff's Healthcare Allegations

The plaintiff alleges that on December 2, 2017, he sought treatment for a rash that covered 40% of his body. He asserts that defendant John/Jane Doe healthcare provider diagnosed him with "scabbies"—the court suspects the plaintiff means "scabies," a condition caused by tiny mites burrowing under the skin—and gave him medication. Dkt. No. 1 at 9. He states that the medication "caused him extreme discomfort, burning pains;" the nurse responded that this was a normal effect of the medication. Id. He says that "days later [he] informed [the] medical staff that [he] was 'on fire' and '[his] wounds [were] pussing.'" Id.

He says that he was "given the ultimatum of 'Do the treatment or go to seg!'" Id. So he did the treatment, "under duress and coercion." Id. The plaintiff indicates that defendant Nancy Bowen gave him the second dose of the medication, which also burned his skin; Bowen told him, "that's your body pushing out the infection and that's normal for [scabies]." Id. at 6.

The plaintiff indicates that on December 10, 2017—about a week later—the medical staff diagnosed him with chicken pox. Id. at 9. He specifies that defendant Melanie Berenie made the diagnosis, and "threatened [him] with 'hole time, discipline' if [he] refused the second round of [scabies] treatment." Id. at 7. He states that defendant Berenie also "prescribed [his] third round of Prednisone 20mg for 'rash' and Naproxen 500mg for pain." Id. The plaintiff says he was then placed on quarantine for chicken pox—he does not say by whom. Id. at 9.

The next day—December 11, 2017—the plaintiff "was sent off site" to a specialist, who diagnosed him with "contact dermatitis." Id. at 7, 9. He says that defendant Dr. Murphy confirmed that assessment of the plaintiff's condition on December 13, 2017, id. at 9, Ex. at 12, and gave him "medications which masked the symptoms of the 'rash,' that still [was] over 40% of [the plaintiff's] body," id. at 9. The plaintiff alleges that the "masking meds" ran out, that that the rash returned "with a worse burn and more pain." Id. at 9.

The plaintiff asserts Dr. Murphy later diagnosed him with eczema. Id. at 7. It appears that this diagnosis took place on January 5, 2018. Id. at 7, 17.

7

The plaintiff states that two defendant Jane Doe nurses prescribed him various medications "that masked the original issue." Id. at 8. He says that these nurses prescribed him prednisone on December 4, 2017, and prescribed him "Triameialone 0.1%, Prednisone Tablets, and Cephalexin" on December 11, 2017. Id.

The plaintiff asserts that he still "[has] had no treatment for [his] rash which is slowly healing with third round of Prednisone." Id. at 17.

### C. The Plaintiff's Inmate Complaint and Interview Requests

The plaintiff filed an inmate complaint on December 15, 2017, stating that his rash had been misdiagnosed and that he was given improper medication that left him with significant scarring on his body. Dkt. No. 1-1 at 2-5. The complaint examiner, defendant R. Bubolz, reviewed the complaint and found that the plaintiff's "concerns with [his] diagnosis was addressed accordingly" and that "no misdiagnosis took place." Id. at 12-13. Their recommendation for dismissal was affirmed by defendant Lori Doehling. Id. at 11.

The plaintiff appealed the dismissal, id. at 8, and defendant B. Bacon responded by informing the plaintiff that he had used the wrong form to appeal his dismissed complaint, id. at 6. The plaintiff included with his complaint a copy of a Request for Review of Rejected Complaint dated December 30, 2017. Id. at 7-8. The plaintiff also submitted three interview requests seeking

information about the tests the nurses had conducted to try to diagnose his condition. Id. at 9-10, 15. They were referred to the health services unit.

The plaintiff alleges that the complaint department is biased against inmates. Dkt. No. 1 at 10. He argues that the two chief complaint examiners also are corrections officers, which "allows them to use their personal relationships, with other staff members to influence their decisions when viewing complaints." Id. He says that the examiners rarely contact inmates during reviews; no one took photos of his rash. Id. He says that the complaint examiners refused to accept or acknowledge any of his inmate complaints. Id. at 11. He says that "Director Hines" (not a defendant) has refused to allow him to have photos taken of his injuries, and that Sgt. Zieggler (not a defendant) shares his personal information with other inmates, updates them on his condition and provides them with false information, violating his right to privacy. Id. He alleges that examiner Bubholz didn't help him, and that Bubholz's inaction made him "lose 'all hope' in the ability to have wrongs committed against [his] health, safety and well being righted by institution staff . . . ." Id. at 10-11.

The plaintiff seeks injunctive relief and compensatory and punitive damages.

D.  The Court's Analysis

The plaintiff seems to be asserting an Eighth Amendment deliberate indifference claim against defendants Nurse Bowens, Dr. Murphy and Nurse

Berein, John/Jane Doe nurses, and John/Jane Does ("on call advanced care providers," dkt. no. 1 at 1), based on their alleged misdiagnoses and inadequate treatment of his condition, which caused him to suffer additional pain and discomfort. The plaintiff seems to be alleging an Eighth Amendment claim against defendant Craig O'Donnell ("Office of the Secretary," dkt. no. 1 at 1), Health Services Unit assistant manager Dawn Fofana, Health Services Unit manager Dr. Foster, and complaint examiners Brad Hompe (in Madison), Lori Doehling, R. Bubolz and B. Bacon, for their alleged failure to properly investigate his inmate complaint regarding the medical misdiagnoses. Finally, the plaintiff seems to be asserting an Eighth Amendment claim against defendants Warden Judy Smith, Deputy Warden J. Zannon, and security director Captain Toney for their alleged failure to protect him because they were purportedly aware of "the injustice" he was enduring but "failed to render aide." Id. at 5. The court will address each claim in turn.

        1.     *The Alleged Misdiagnoses*

To state an Eighth Amendment claim of deliberate indifference to a serious medical need, the plaintiff must show: (1) that he suffered from an objectively serious medical condition; (2) that the defendant knew of the condition and was deliberately indifferent in treating, or failing to treat, it; and (3) that the indifference caused the plaintiff some injury. Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). The court assumes for the purposes of screening

that the rash that covered 40% of the plaintiff's body was an objectively serious medical condition.

The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." Id. Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 843 (1994)). Negligence cannot support a claim of deliberate indifference; nor is medical malpractice a constitutional violation. Estelle, 429 U.S. at 105-06; Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). The fact that a plaintiff disagrees with a doctor's prescribed course of treatment does not constitute deliberate indifference. Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (citing Estelle, 429 U.S. at 107). Yet, the fact that a plaintiff received some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. Id. at 654 (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir.1996)). Further, "'[w]hether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question'" that may require investigation by expert witnesses. Ledford v. Sullivan, 105 F.3d 354, 360 (7th Cir. 1997) (quoting Greason v. Kemp, 891 F.2d 829, 835 (11th Cir. 1990).

The plaintiff alleges that the John /Jane Doe nurse misdiagnosed him with "scabbies" and prescribed him medication that caused an adverse reaction. He further alleges that defendants Bowens and Berenie were aware of the adverse reaction, but insisted that the plaintiff continue the course of treatment while misdiagnosing him with other conditions. The plaintiff also alleges that defendant Murphy misdiagnosed him with contact dermatitis and eczema, and that two nurse Jane Does prescribed various medications that merely masked his symptoms. Finally, he alleges that the John/Jane Doe "on call advance care providers" put him into a scabies protocol without taking any action to verify his condition, relying on the word of others. Dkt. No. 1 at 6. While the plaintiff's allegations can be construed as allegations of malpractice, which does not amount to an Eighth Amendment violation, the court finds at this early stage that the plaintiff has sufficiently alleged an Eighth Amendment claim of deliberate indifference against John/Jane Doe nurses, Bowens, Berenie, Murphy, and the John/Jane Doe advanced care providers.

The court will order the complaint to be served on Bowens Berenie and Murphy. After the defendants have answered the complaint, the defendant may use the discovery process to ask for information about the identities of the John/Jane Doe nurses and the John/Jane Doe advanced placement care defendants.

## 2. *Failure to Investigate*

The plaintiff asserts that defendants Craig O'Donnell, Brad Hompe, Lori Doehling, R. Bubolz, B. Bacon, Dawn Fofana, and D. Foster failed to properly investigate his inadequate medical care claim thus leaving him to endure continued pain from his misdiagnoses.

A complaint examiner runs the risk of being liable for deliberate indifference if she fails to do her appointed tasks by, for example, "routinely sen[ding] each grievance to the shredder without reading it" or "intervene[ing] to prevent the medical unit from delivering needed care might be thought liable." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) (citations omitted). But "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609–10 (7th Cir.2007).

The plaintiff attached to the complaint a copy of the inmate complaint he submitted, as well as the appeal he says he filed. The plaintiff's own documents show that that complaint examiner Bubholz reviewed the complaint and recommended denial; Dohling accepted that recommendation. These two defendants did not fail to perform their appointed tasks. The plaintiff simply disagrees with their decision. That is not enough to support a deliberate indifference claim against them, even if the plaintiff eventually proves that the

13

medical staff was indifferent. "[A complaint examiner's] failure to realize the potential gravity of the situation does not amount to deliberate indifference." Greeno v. Daley, 414 F.3d 645, 657 (7th Cir. 2005).

The same is true for defendant Bacon. Bacon sent the plaintiff a letter, telling him he'd submitted his appeal on the wrong form. The only allegation the plaintiff makes against Bacon is that he "failed to render any aid to make an attempt to right the wrong" against the plaintiff. Dkt. No. 1 at 5. As with the plaintiff's claims against Bubholz and Dohling, this is not enough to state a deliberate indifference claim against a complaint examiner.

The plaintiff complains that O'Donnell and Hompe—both of whom, according to the plaintiff, work for the Department of Corrections in Madison—made decisions regarding his complaint based on the opinions of others, without investigating the situation themselves. These claims are not sufficient to show deliberate indifference, for the same reasons.

The court also notes that the complaint examiners—whether in Madison or at the institution—were not medical professionals. There is a presumption "that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care . . . ." Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008)). "[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (citation omitted). The plaintiff's grievance

was that he was misdiagnosed, and improperly treated, by the medical staff. The non-medical complaint examiners were entitled to rely on the judgment of the medical staff in that regard.

The plaintiff alleges that HSU manager Dr. Foster learned about the dismissal of his complaint, but did nothing to right the situation. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985) (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). Further, "[p]ublic officials do not have a free-floating obligation to put things to rights . . . ." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The fact that Dr. Foster learned that the plaintiff had complained about his medical care, and that the compliant had been dismissed, does not make him personally liable for the alleged misdiagnoses or medication problems. The plaintiff has not alleged that Foster was personally involved in the alleged violations of his Eighth Amendment rights.

The same is true for assistant HSU manager Fofana. The plaintiff alleges that complaint examiner Bubholz contacted Fofana about the plaintiff's

complaint (which Bubholz received on December 18, 2017, dkt. no. 1-1 at 12). He says that at the time Bubholz contacted Fofana, her "professional judgment [came] under suspicion due to the fact that on 12-10-17 [he] was placed in chicken pox protocol . . . to confirm the misdiagnos[i]s of "[scabies]." Dkt. No. 1-2 at 6. The plaintiff appears to argue Fofana is liable for the alleged misdiagnoses and medication problems that occurred in early December, because she heard about them weeks to days later. This is not enough to establish personal involvement. Indeed, the plaintiff says that he was placed on the chicken pox protocol on December 10, eight days before Bubholz received the complaint and contacted Fofana. Fofana's after-the-fact knowledge of the plaintiff's allegations, like Foster's, is not sufficient to state personal liability under §1983.

The court will not allow the plaintiff to proceed against Bubholz, Dohling, Bacon, O'Donnell, Hompe, Foster or Fofana.

      3.    *Failure to Protect*

The plaintiff argues that Warden Smith, Deputy Warden Zannon, and Security Director Toney "failed to render aid to the injustice being committed against [his] safety and health." Dkt. No. 1-2 at 5.

As the court already has noted, to prove a deliberate indifference claim, the plaintiff must allege that the defendant was subjectively aware of the plaintiff's serious medical need, but consciously disregarded it. The plaintiff has not alleged that he told these defendants about his situation, or that they

16

knew about it some other way. He has not alleged that they were subjectively aware of his serious medical need.

Further, these three defendants, like the complaint examiners, are non-medical officials. As noted above, "non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care." Hayes v. Snyder, 546 F.3d at 527. Even if Smith, Zannon and Toney had known about the plaintiff's medical condition, they were entitled to relied on the judgment of the treating medical professionals.

The court will dismiss Smith, Zannon and Toney as defendants.

## V.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES without prejudice** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES as moot** the plaintiff's motion to use funds from release account to pay partial filing fee. Dkt. No. 5.

The court **DISMISSES** defendants Bubholz, Dohling, Bacon, O'Donnell, Hompe, Foster, Fofana, Smith, Zannon and Toney.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent to the Wisconsin

Department of Justice for service on defendants Bowens, Murphey and Berenie.

The court **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, the defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff must pay the $345.46 balance of the filing fee as he is able. The plaintiff may pay by cash, by bringing the payments to the clerk's office at 517 East Wisconsin Avenue, Room 362, Milwaukee, Wisconsin, between the hours of 8:30 a.m. and 4:30 p.m. He may pay by check, cashier's check or money order by making the check payable to Clerk, U.S. District Court, and mailing it to Clerk of Court, United States District Court, 517 East Wisconsin Avenue, Room 362, Milwaukee, WI 53202. Finally, he may pay by credit card, by calling 414-297-3417 during business hours and asking for the cashier.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case. Because the clerk will electronically scan and enter on the docket each document received from the plaintiff, the plaintiff does not need to mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should, however, keep a personal copy of each document he files with the court.

The court advises the plaintiff that failure to file documents or information by the deadlines the court sets may result in the dismissal of this case for failure to prosecute.

The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**